IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JARVIS JONES,         ) | |
|    Plaintiff,         ) | |
|                    ) | |
| v.            ) | CIVIL ACTION NO. 1:22-00475-KD-N |
|                    ) | |
| THE WHIRLPOOL     ) | |
| CORPORATION,    ) | |
|    Defendant.       ) | |

**ORDER**

This action is before the Court[1] on Plaintiff Jarvis Jones's motion to compel discovery (Doc. 69), Defendant The Whirlpool Corporation's ("Whirlpool") opposition response (Doc. 71), and Plaintiff's reply in support (Doc. 72), along with Plaintiff's motion for leave to seal exhibits accompanying his motion. (Doc. 67). The parties appeared before the Court for oral argument in connection with Plaintiff's motion on June 21, 2024. (Doc. 77). Upon consideration, with the benefit of oral argument, and for the reasons stated herein, Plaintiff's motion for leave to seal (Doc. 67) is **GRANTED** and his motion to compel discovery (Doc. 68) is **GRANTED in part** and **DENIED in part**.

**I.     Background**

Jones initiated this action in the Circuit Court of Mobile County, Alabama on October 31, 2022. (Docs. 1, 1-2). Whirlpool removed on diversity grounds in November 2022. *See* 28 U.S.C. §§ 1332, 1446. (Doc. 1). The operative amended complaint, filed

---

[1] The assigned District Judge has referred this motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)–(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (5/13/2024 elec. ref.).

April 19, 2023 against Whirlpool and now-former Defendant Robertshaw Controls Company ("Robertshaw"),[2] brings causes of action under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") for design and manufacturing defects (Count I) and failure to warn (Count II), along with causes of action rooted in negligence (Count III), wantonness (Count IV) and breach of warranties (Count V). (Doc. 23).

Discovery began in January 2023, and Plaintiff's first set of interrogatories and requests for production were served March 31, 2023. (Doc. 18). Discovery proceeded without much interruption until February 2024 when Robertshaw noticed the Court of its bankruptcy filing. (Doc. 54). That notice prompted a stay of discovery as to Robertshaw pursuant to 11 U.S.C. § 362(a) (Doc. 55), and motion practice regarding whether that stay should extend to Whirlpool. (Docs. 56, 59, 62). Whirlpool ultimately withdrew its motion seeking to share in the stay (Doc. 63; *see* Doc. 64), but the motion practice necessitated changes to the schedule (*see* Docs. 65, 66). At present, discovery is set to close November 14, 2024. (Doc. 66).

The operative motion to compel was filed May 13, 2024. (Doc. 68).[3] Put at issue by the motion are Whirlpool's responses to Interrogatories No. 11 and No. 12 and

---

[2] Robertshaw was dismissed without prejudice under Rule 41(a)(2) as of April 30, 2023. (Docs. 58, 64).

[3] Plaintiff contemporaneously moved for leave to seal exhibits relevant to his motion in accordance with the Protective Order governing this action and the Court's Local Rules. S.D. Ala. CivLR 5.2. (Doc. 67; *see* Doc. 34). While the exhibits filed under seal do not themselves bear any markings indicating their designation by Whirlpool as protected material, Plaintiff's avers they have been so designated and requests they "remain under seal for the duration of this action." (Doc. 67). Accordingly, and in the absence of any dispute regarding whether such items have been properly marked or filed under seal, Plaintiff's motion for leave to seal those exhibits (Doc. 67) is **GRANTED** and the Clerk is **DIRECTED** to maintain Doc. 69 under seal.

RFPs No. 11 and No. 12. (Doc. 68).

## II. Legal Standards

The scope of discovery for civil actions in federal court is broad, allowing each party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). This broad purpose aims to empower parties "to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). However, it is not without limits, and district courts have "broad discretion to compel or deny discovery." *United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020). *See Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 676 (N.D. Ala. July 10 2015) ("The scope of discovery is largely within the discretion of the trial court because discovery should be tailored to the issues involved in the particular case") (cleaned up)).

Parties "may move for an order compelling disclosure or discovery" under Rule 37(a). Relevant here, such a motion is permitted if a party "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents… as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(iii)-(iv). Under Rule 37(a)(4), "an evasive or incomplete, disclosure, answer, or response must be treated as a failure to disclose, answer or respond." A resisting party's basis for non-disclosure must be adequately stated, and blanket or conclusory objections to production in the face of otherwise proper discovery requests are "tantamount to not making any objection at all." *Boler v. Bank of Am., N.A.*, 2018 U.S. Dist. LEXIS 222128, *4 (N.D. Ala. Oct. 1, 2018)

3

(citation omitted). Ultimately, the resisting party bears the burden of establishing how and why the discovery sought is improper. *See e.g.*, *Panola Land Buyers Assoc. v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985).

### III. *Discovery at Issue*

Plaintiff's motion identifies disputes regarding the following items from his first set of discovery and Whirlpool's responses thereto:

> **Interrogatory No. 11**: Describe in detail any warranty claims, customer complaints, field reports, industry alerts, injury reports, consumer notices, and/or other claims or notices received by and/or otherwise known to this Defendant in the last ten years concerning the possibility of the burners of the Glass Top Range product line spontaneously igniting and/or otherwise having a temperature/heat output that deviates from the burner's controller settings. Your response should include the date of each notice, the name and address of the person or entity that provided it, the type of notice submitted, and the substance of the notice.[4]
>
> **Interrogatory No. 12**: State whether any other claims or lawsuits of any kind have been filed against this Defendant in the past ten years involving allegations related to the burners of the Glass Top Range product line spontaneously igniting and/or otherwise having a temperature/heat output that deviates from the burner's controller settings. If so, state the caption of each lawsuit, where and when it was filed, the name and address of all parties, the substance of the claims, and the status and/or resolution of the lawsuit.
>
> **RFP No. 11**: Produce any warranty claims, customer complaints, field reports, industry alerts, injury reports, consumer notices, and/or other claims or notices received by and/or otherwise known to this Defendant in the last ten years concerning the possibility of the burners of the Glass Top Range product line spontaneously igniting and/or otherwise having a temperature/heat output that deviates from the burner's controller settings. Your response should include the date of each notice, the name

---

[4] Plaintiff appeared to amend the text of this interrogatory, albeit informally, in an October 6, 2023 letter. (Doc. 68-1, PageID.477). The rephrasing removed this item's request for a description of the names and addresses belonging to the persons or entities underlying the subject claims, complaints, reports, alerts or notices, along with its request to describe the "type of notice submitted," the latter of which was likely surplusage in the first instance. (*Compare id. with* Doc. 68, PageID.458).

and address of the person or entity that provided it, the type of notice submitted, and the substance of the notice.

**RFP No. 12**: Produce any other claims or lawsuits of any kind have been filed against this Defendant in the past ten years involving allegations related to the burners of the Glass Top Range product line spontaneously igniting and/or otherwise having a temperature/heat output that deviates from the burner's controller settings.[5]

(Doc. 68, PageID.458).

Whirlpool's initial responses state:

**Response (Interrog. No. 11):** Whirlpool objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of this case. This interrogatory also seeks information that is protected by Whirlpool's right of privacy and disclosure would violate the right of privacy of Whirlpool's customers. Whirlpool further objects to this interrogatory to the extent it seeks documents or information protected from discovery by the attorney-client privilege or by the work-product doctrine. Without waiving these objections, **Whirlpool possesses electronic data regarding alleged product failures in an information system**. However, the information that Plaintiff requests is not categorized as requested. Whirlpool's database information is generally categorized by claimant name and appliance type but not by the component model number or component part number. Accordingly, this information is better obtained from Robertshaw who is a defendant in this lawsuit.

**Response (Interrog. No. 12):** See response to Interrogatory No. 11.

**Response (RFP No. 11):** See Whirlpool's response and objections to Interrogatory No. 11.

**Response (RFP No. 12):** See Whirlpool's response and objections to Interrogatory No. 11.

(Doc. 68, PageID.459) (emphasis in original).

---

[5] Plaintiff also appeared to informally amend the text of this request in the October 6, 2023 letter, replacing his request for production of "any other claims or lawsuits" with a request for "copies of the complaint(s) from each lawsuit." (*Compare* Doc. 68, PageID.458 *with* Doc. 68-1, PageID.479).

5

Plaintiff's motion states these responses have been supplemented four times. (Doc. 68). An August 11, 2023 supplementation is not reproduced, but Plaintiff apparently viewed it as "entirely insufficient." (Doc. 68, PageID.460; *see* Doc. 68-1, PageID.472-73). Whirlpool served supplemental responses to RFP No. 11 and RFP No. 12 on November 16, 2023 and to Interrogatory No. 11 and Interrogatory No. 12 on April 12, 2024, stating:

> **Supplemental Response (RFP No. 11)**: Without waiving such [prior] objections, Whirlpool has been unable to locate any other claims or lawsuits with **Model WFE505W0JZ0** involving allegations of spontaneous ignition or a temperature/heat output that deviates from the burner's control settings.
>
> **Supplemental Response (RFP No. 12)**: See Supplemental Response to Request No. 11.
>
> **Supplemental Response (Interrog. No. 11)**: Without waiving such [prior] objections, Whirlpool has been unable to locate any other claims or lawsuits with **Model WFE505W0JZ0** involving allegations of spontaneous ignition or a temperature/heat output that deviates from the burner's control settings.
>
> **Supplemental Response (Interrog. No. 12)**: See Supplemental Response to Interrogatory No. 11.

(Doc. 68, PageID.460-62). Plaintiff notes a final supplementation on an unstated date wherein Whirlpool allegedly affirmed its production of all responsive documents "within [its] possession, custody, or control," but it is not included in the record. (*Id.*).

## IV. Discussion

Whirlpool is one of the largest kitchen appliance companies in the world,[6] and

---

[6] *See* https://www.imarcgroup.com/top-kitchen-appliances-companies-world (last visited June 26,

6

several brands operate under the Whirlpool corporate umbrella.[7] This case involves personal injuries which Plaintiff alleges were the result of one or more defects in a Whirlpool product. (*See generally*, Doc. 23). By way of the discovery items at issue here, Plaintiff seeks learn about other instances where similar Whirlpool products may have failed or otherwise malfunctioned in a manner like that which he alleges caused his injuries. He seeks a description of those instances and production of any accompanying documentary evidence via Interrogatory No. 11 and RFP No. 11 ("No. 11 items"), and a description of other similar instances which resulted in lawsuits, along with the complaints filed in those cases via Interrogatory No. 12 and RFP No. 12 ("No. 12 items"). (*See generally*, Doc. 68).

      Whirlpool initially objected to the discovery sought on a myriad of grounds, before stating it "possesses electronic data regarding alleged product failures." (Doc. 68, PageID.459).[8] Whirlpool's counsel affirmed during oral argument that Whirlpool likely would be able to produce whatever information Plaintiff seeks *if* it knows what it needs to look for. (*See* Doc. 77). Accordingly, this dispute is not about whether Whirlpool can provide responsive information, but about whether it should have to, the scope of the information that it must ultimately provide, the relative burden that

---

2024).

[7] *See* https://www.whirlpoolcorp.com/brands-we-love/ (last visited June 26, 2024). (*See* Doc. 72-1).

[8] Whirlpool's initial responses stated the system containing this data is "categorized by claimant name and appliance type, *but not by the component model number or component part number*." (Doc. 68, PageID.459) (emphasis supplied). This explanation of the system's applicable search parameters appears to be inconsistent at best, as subsequent meet and confer communications reveal Whirlpool's willingness to conduct additional searches of that system but stated that it would need Plaintiff to provide "part number[s] for the specific component(s)" in order to do so. (*See* Doc. 68-1, PageID.481; *see also*, Doc. 68-1, PageID.491 (noting that inconsistency in meet and confer letter)).

production might impose, whether that information is relevant, and whether its scope is proportional to the needs of this case.

Part of the issue underlying this dispute stems from the wording of Plaintiff's interrogatories and requests. The undersigned agrees with Whirlpool that these items may not be perfectly phrased and can see how their manner of presentation could pose confusion and/or reticence when it came to Whirlpool's searching of its system for responsive information and fashioning a response. For example, Plaintiff's failure to define the term "product line" – which it associated with the "Glass Top Range" referenced in its discovery (for which a specific model number was assigned) – could be fairly read as meaning only instances relating to products installed with the specific "Whirlpool glass top range, Model No. WFE505W0JZ0." (*See* Doc. 71, PageID.543). Further, Plaintiff's discovery requests fail to clarify whether the discovery seeks only Whirlpool-branded products or if the requests also extend to products and brands beneath the Whirlpool corporate umbrella. (*See id.*).

However, the undersigned also agrees with Plaintiff that he is at a significant information disadvantage when it comes to knowledge of Whirlpool's products, parts, components, and various products lines. Put simply, this information disadvantage prevents him from asking the "perfect" questions which Whirlpool implies he must ask before it must respond. For example, there has been much discussion about Plaintiff identifying "specific" parts, components, or model numbers. (*See e.g.*, Doc. 68-1, PageID.481; Docs. 71, 77). Whirlpool has "agreed to conduct additional searches once [Plaintiff] provides that information." (*See* Doc. 68-1, PageID.483; Docs. 71, 77).

8

But requiring Plaintiff to come up with the precise search parameters for Whirlpool to run places him in a catch-22. He could try coming up with a list of the part, component or model numbers for Whirlpool to use, but he cannot possibly put together a complete list, and putting together an incomplete list would cabin the scope of his discovery requests to whatever partial list he can come up with. (*Id*.).

The parties' meet and confer communications, along with Plaintiff's briefing and representations during oral argument clarify the physical characteristics of the products underlying both the No. 11 and No. 12 items: Glass Top Stoves (bearing any Whirlpool or Whirlpool umbrella brand) with physical knobs that contain Robertshaw Infinite Switches. (*See generally*, Docs. 68, 77). Only a finite number of Whirlpool and/or Whirlpool umbrella products will contain those exact specifications, and given Whirlpool's institutional knowledge of its own products, the undersigned sees no reason why Whirlpool could not use that criteria to ascertain which of its products fit that description. Moreover, the relative burden imposed on Whirlpool by requiring it to undertake this effort is substantially less than the one which would be imposed on Plaintiff to do the same, as requiring him to do so would take substantial time and cost, only to yield a likely incomplete result.

Once those specific products are determined, Whirlpool should be able to identify the associated model numbers with relative ease, which it can use to run a search of its database for information responsive to the No. 11 and No. 12 items – i.e., for instances where those products "spontaneously ignit[ed] and/or otherwise ha[d] a temperature/heat output that deviate[d] from the burner's controller" and led to

claims, complaints, reports, alerts, notices or lawsuits. The results of that search should further pave the way for Whirlpool to provide a fully responsive answer to RFP No. 11 and RFP No. 12, because it will then know where to look.[9]

Whirlpool bears the burden of establishing the discovery sought is improper, *Panola Land Buyers Assoc.*, 762 F.2d at 1559, and its various objections largely do not change the undersigned's calculus.[10] The information disadvantage previously discussed directly resulted in the imperfect phrasing of Plaintiff's requests, and it is largely that imperfect phrasing upon which Whirlpool's objections are based.

Plaintiff has consistently described the discovery sought as being aimed at the "failure mode at issue." (*See e.g.*, Doc. 68, 68-1, 72). Here, that is "spontaneous ignition" or "a temperature output deviating from a control setting." (Doc. 68-1, PageID.477). Under the substantial similarity doctrine, "[e]vidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the strength of a product, the standard of care, and causation." *Weeks v. Remington Arms Co.*, 733 F.2d 1485, 1491 (11th Cir. 1984) (citation omitted). *See Beasley v. Robotec, Inc.*, 2020 U.S. Dist. LEXIS 254636, *6 (S.D. Ala. Nov. 16, 2020) ("Generally, different models of a product will be relevant if they share with the

---

[9] Whirlpool need not provide Plaintiff with a list of model numbers or specific products fitting the physical specifications described herein, as he seeks only details of claims, complaints, reports, alerts, notices and/or lawsuits stemming from relevant incidents involving those models or products.

[10] To the extent Whirlpool objects based on "Whirlpool's right to privacy," the "right of privacy of Whirlpool's customers," attorney-client privilege and work-product protection, its objections are **OVERRULED**, as it provided no substantive basis for those objections in its responses, supplemental responses, opposition response or at the oral argument. (Docs. 68, 71, 77). To the extent privacy concerns are raised, the undersigned notes the Protective Order entered in this action. (*See* Doc. 34).

10

accident-causing model those characteristics pertinent to the legal issues raised in the litigation") (citing *Fine v. Facet Aerospace Prod. Co.,* 133 F.R.D. 439, 441 (S.D.N.Y. 1990))). The undersigned agrees with Plaintiff that claims, complaints, reports, alerts, notices or lawsuits known to Whirlpool arising from instances where Whirlpool or Whirlpool umbrella products meeting the precise physical specifications allegedly failed as a result of a temperature output deviating from a control setting or spontaneous ignition could be relevant to the claims at issue here. Whirlpool's arguments to the contrary are unpersuasive. (*See* Doc. 71).

Both parties point to *Utter v. Outsource Utility Contractor*, BCV-21-100792, Superior Court of California, County of Kern (hereinafter "*Utter*") in their briefs. Plaintiff views this case (which was previously undisclosed in discovery) as a responsive example based on "substantially similar circumstances" where Whirlpool is "co-defending with Robertshaw." (Doc. 68, PageID.481). Whirlpool advances two reasons why *Utter* is not a "substantially similar" case to the one at hand. One of those reasons falls flat,[11] while the other has some legs.[12] However, the present dispute is not about whether *Utter* is relevant or a "substantially similar" case to the

---

[11] Using *Beasley*'s discussion on relevant discovery of "different models," Whirlpool argues the Maytag stove at issue in *Utter* is from "a wholly separate product line" and "not a different model of the same product" as the stove at issue here. (Doc. 71, PageID.545) (citing 2020 U.S. Dist. LEXIS at *6)). This argument reads *Beasley* too narrowly by asserting discovery could only be relevant among different models of the same product or different products within a product line. The unifying characteristics making Plaintiff's discovery relevant here – regardless of the specific model or product line – are the physical specifications of Plaintiff's stove, paired with the specific mode of failure.

[12] Whirlpool's second argument is well-taken insofar as the incident in *Utter* is alleged to have resulted from a negligent or erroneous "power hookup," rather than flowing directly from an alleged temperature output deviation that resulted in "spontaneous ignition" without an intervening cause. (*See* Doc. 71). Thus, in fairness to Whirlpool, *Utter* itself may not fit the bill as an instance responsive to Plaintiff's discovery requests.

11

one at hand – it is about whether Plaintiff's discovery requests target potentially relevant material. For the reasons stated above, the undersigned agrees that it does.

However, the undersigned does find Plaintiff's discovery requests should be limited in temporal scope. Plaintiff appeared to concede during oral argument that it would be willing to limit its requests to a five-year period, as opposed to the stated ten years. (Doc. 77). This is a reasonable concession, which the undersigned finds should be applied here, as it will at least reduce Whirlpool's burden in providing a fully responsive answer to these discovery items and will bring the proportionality of the requests into greater balance with the issues relevant to this case.

## V.  *Conclusion*

Upon consideration and for the reasons stated herein, Plaintiff's motion to compel (Doc. 68) is **GRANTED in part** and **DENIED in part**.

Whirlpool is **ORDERED** to identify its models or products (including those within the Whirlpool corporate umbrella) fitting the physical characteristics of the stove at issue in this case, as described in Part IV, which it shall then use to search its database for responsive instances known to Whirlpool and occurring no earlier than five years prior to the date upon which Plaintiff's initial discovery was served, where those models or products are alleged to have failed in a manner the same or substantially similar to the manner described by Plaintiff. Whirlpool is further **ORDERED** to utilize these results and supplement its response to Plaintiff's discovery by no later than **July 22, 2024**. *See* S.D. Ala. CivLR 5(b).

**DONE** and **ORDERED** this the 1st day of July 2024.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**
