IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JARVIS JONES,** | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **CIVIL ACTION NO. 1:22-00475-KD-N** |
| | **)** | |
| **THE WHIRLPOOL** | **)** | |
| **CORPORATION,** | **)** | |
| **Defendant.** | **)** | |

## ORDER

This action is before the Court on Jarvis Jones' (Plaintiff) motion to compel discovery (Doc. 81), [1] The Whirlpool Corporation's (Defendant) opposition response (Doc. 90), and Plaintiff's reply in support (Doc. 92). The parties appeared before the Court for oral argument in connection with Plaintiff's motion on September 10, 2024. (Doc. 95). Upon consideration, with the benefit of oral argument, and for the reasons stated herein, Plaintiff's motion to compel discovery (Doc. 81) is **GRANTED in part** and **DENIED in part**.

### I.    Background

Plaintiff initiated this action in the Circuit Court of Mobile County,

---

[1] The assigned District Judge has referred this motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)–(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (8/6/2024 elec. ref.).

Alabama on October 31, 2022. (Docs. 1, 1-2). Defendant removed on diversity grounds in November 2022. See 28 U.S.C. §§ 1332, 1446. (Doc. 1). The operative amended complaint filed April 19, 2023, against Defendant and now-former Defendant Robertshaw Controls Company ("Robertshaw"),[2] brings causes of action under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") for design and manufacturing defects (Count I) and failure to warn (Count II), along with causes of action rooted in negligence (Count III), wantonness (Count IV) and breach of warranties (Count V). (Doc. 23).

Discovery began in January 2023, and Plaintiff's first set of interrogatories and requests for production were served March 31, 2023. (Doc. 18). Discovery proceeded without much interruption until February 2024 when Robertshaw noticed the Court of its bankruptcy filing. (Doc. 54). That notice prompted a stay of discovery as to Robertshaw pursuant to 11 U.S.C. § 362(a) (Doc. 55), and motion practice regarding whether that stay should extend to Defendant. (Docs. 56, 59, 62). Defendant ultimately withdrew its motion seeking to share in the stay (Doc. 63; see Doc. 64), but the motion practice necessitated changes to the schedule (see Docs. 65, 66). At present, discovery is set to close November 14, 2024. (Doc. 66).

---

[2] Robertshaw was dismissed without prejudice under Rule 41(a)(2) as of April 30, 2023. (Docs. 58, 64).

A previous motion to compel was filed May 13, 2024. (Doc. 68), which was denied in part and granted in part by the Court on July 1, 2024 (Doc. 79). Addressing that motion, the Court ordered Defendant to identify its models or products (including those within the Defendant corporate umbrella) fitting the physical characteristics of the stove at issue, which it would then use to search its database for responsive instances known to Defendant—occurring no earlier than five years prior to Plaintiff's initial discovery—where those models or products were alleged to have failed in the same or substantially similar manner to that described by Plaintiff. (Doc. 79). Defendant was ordered to supplement its response, utilizing those search results, which yielded one additional similar incident from Defendant's "Claims and Litigation Database" that was not reported to Plaintiffs prior to this motion to compel. (Doc. 81, PageID.658; Doc. 90, ¶ 5, PageID.815).

Following the above discovery supplementation, a deposition of a corporate representative was held July 23, 2024. (Doc. 81, Ex. 5). During that deposition, David Iott, a product safety engineer with Whirlpool, provided various statements regarding internal databases and company procedures for similar claims to those made by Plaintiff. (Doc. 81, Ex. 5). The supplemental search and deposition lead us to the current Motion to Compel filed by Plaintiff.

3

(Doc. 81). [3]

## II.    Legal Standards

The scope of discovery for civil actions in federal court is broad, allowing each party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). This broad purpose aims to empower parties "to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). However, it is not without limits, and district courts have "broad discretion to compel or deny discovery." *United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020); *see Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 676 (N.D. Ala. July 10, 2015) ("The scope of discovery is largely within the discretion of the trial court because discovery should be tailored to the issues involved in the particular case") (cleaned up).

Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case. *See Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016). Whether a particular discovery request is "proportional to

---

[3] Plaintiff contemporaneously moved for leave to seal exhibits relevant to his motion in accordance with the Protective Order governing this action and the Court's Local Rules. S.D. Ala. CivLR 5.2. (Doc. 80; *see* Doc. 34), which was granted. Documents **shall remain sealed** subject to future reconsideration. (*See* Doc. 87; Doc. 32).

the needs" of the case involves consideration of several non-exclusive factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Graham*, 2016 WL 1319697 at *3 (citations omitted). The court must "consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26, 2015 advisory committee note; *see Lemons v. Principal Life Ins. Co.*, 2020 WL 9348326 (N.D. Ala. Mar. 9, 2020).

Parties "may move for an order compelling disclosure or discovery" under Rule 37(a). Relevant here, such a motion is permitted if a party "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents… as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(iii)-(iv). Under Rule 37(a)(4), "an evasive or incomplete, disclosure, answer, or response must be treated as a failure to disclose, answer or respond." A resisting party's basis for non-disclosure must be adequately stated, and blanket or conclusory objections to production in the face of otherwise proper discovery requests are "tantamount

to not making any objection at all." *Boler v. Bank of Am., N.A.*, 2018 WL 7142093, at \*4 (N.D. Ala. Oct. 1, 2018) (citation omitted). Ultimately, the resisting party bears the burden of establishing how and why the discovery sought is improper. *See e.g., Panola Land Buyers Assoc. v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985).

When considering requests for additional discovery about a party's discovery efforts—often termed "discovery on discovery"—courts must balance the need for transparency with the potential for undue burden. As noted in *Culliver v. BP*, "[d]iscovery on discovery has been broadly described by courts as any discovery seeking information regarding a party's preservation, collection, and retention efforts." 2022 WL 19568966 (N.D. Fla. 2022). The purpose of such requests is generally "to challenge the sufficiency and thoroughness of the other party's production of documents and other evidence." *Id.*

Courts have traditionally approached discovery on discovery with caution. The Federal Rules of Civil Procedure do not demand perfection, and the occasional omission of relevant documents does not automatically warrant additional discovery. *See id.* However, courts must ensure good faith compliance with discovery obligations and be prepared to investigate beyond mere speculation when potential deficiencies in production are indicated. *See id.*; *see also Lemons*, 2020 WL 9348326.

6

While speculation of wrongdoing is insufficient to justify discovery on discovery, it may be appropriate "where there is evidence of a specific deficiency in the production" *Culliver*, 2022 WL 19568966 at *1. The burden of demonstrating deficiency can be met by pointing to produced documents or other evidence suggesting the existence of additional materials, allowing the court to make a "reasonable deduction that other documents exist" or "pointing to the existence of additional responsive material." *Id.* at *2 (citing *Hubbard v. Potter,* 247 F.R.D. 27 (D.D.C. 2008)).

## III.   DISCOVERY AT ISSUE:

Here, Plaintiff's Motion to Compel (Doc. 81) argues that the search conducted in response to the previous court order was inadequate. The motion contends that other databases likely contain relevant information that was excluded from production. (Doc. 81, ¶ 10, PageID.662). These allegations follow corporate testimony and supplemental production—as described above in Section III—which yielded facially dissimilar documents and raised concerns about possible discrepancies in internal claims processing. (Doc. 81, ¶¶ 10-16, PageID.663-64). Additionally, Plaintiff seeks expanded discovery into product testing, quality assurance, and communications with a now-bankrupt parts supplier. (Doc. 81, PageID.673).

Specifically, Plaintiff seeks the following in the current motion:

- **(1)** All warranty claims, complaints, reports, alerts, notices, lawsuits, or other documentation reflecting substantially similar incidents as defined by this Court's Order dated July 1, 2024;

- **(2)** the Failure Mode and Effects Analysis ("FMEA") for the Glass Cooktop and Infinite Switch;

- **(3)** Whirlpool's manufacturing, testing, and quality assurance records for the Glass Cooktop and Infinite Switch, and Whirlpool's written procedures governing the same; and

- **(4)** documents exchanged between Whirlpool and Robertshaw during the vendor selection process for the Infinite Switch.

  Additionally, Plaintiff requests 30(b)(6) testimony on:

- **(5)** the similar incidents and claims disclosed by Whirlpool and its documentation related to each such event; and

- **(6)** Whirlpool's document searches and related efforts to comply with this Court's Order governing similar incident discovery; and

- **(7)** Whirlpool's knowledge of the facts of the underlying grease fire that injured Plaintiff.

(Doc. 81, PageID.673-74).

## A. DISCUSSION:

As a preliminary matter, concluding from oral arguments, and after review of the relevant motions, part of Plaintiff's request is denied as moot, as it has already resolved or is repetitive of a previous court order. Thus, the following issues are either resolved or subject to forthcoming supplementation and/or stipulation:

- **Item (1)** mirrors this Court's previous Order. (Doc. 79). As such, the issue is deemed denied as moot, as Defendant already bears the burden of responsive discovery encompassed by the Order issued July 1, 2024. (Doc. 79, PageID.651). To the extent any such documents remain outstanding, Defendant is ordered to expend reasonable efforts in production.

- **Item (2),** as addressed at oral arguments, any available "FMEA" documentation, should be provided to Plaintiff subject to the previous confidentiality requirements asserted under the prior Protective Order. (*See* Doc. 34). The Court withholds any opinion regarding responsive requests subsequent to this disclosure.

**Items (3)** through **(7)** remain contested. **Item (3)** provides requests for new documentation regarding "manufacturing, testing, and quality assurance records," for the Glass Cooktop and Infinite Switch. This request appears facially similar to the requests of **Item (2),** requesting engineering analysis,

which Defendant has acknowledged it possesses. The Court makes no finding on the specific availability of additional such documents and is mindful defense counsel asserted the lack of availability for technical analysis on individual components. However, to the extent any such documentation exists, Defendant should make diligent, reasonable efforts to produce to Plaintiff any manufacturing, testing, and quality assurance records for the Glass Cooktop and Infinite Switch, that is not already encompassed by the forthcoming reports produced in response to **Item (2)**.

**Item (4)** requests documents exchanged in the procurement process with now defunct defendant Robertshaw. The Court acknowledges that Defendant may shoulder more of the burden than if there were still co-defendants in this matter, however it is reasonable to assume such documentation may exist regarding the Infinite Switch and is relevant to the subject matter of this case. The Court deems reasonable production of such documents is warranted, subject to privilege and confidentiality.

**Item (5)** and **Item (7)** request deposition testimony on the handling of Plaintiff's incident and related incidents as specified in the previous Order (Doc. 79). The Court recognizes the difficulties faced by Defendant in producing a single witness that can accurately respond to each issue presented by Plaintiff. However, given the deposition of Defendant's prior representative, the Court deems it a reasonable request to provide responsive testimony to

Plaintiff's incident. The questioning of Plaintiff's alleged fire and the associated claims process—and to a reasonable extent, educated responses on similar incidents—is a request elementary in nature to basic discovery. *See* Fed. R. Civ. P. 26. Therefore, Defendant is ordered to provide deposition testimony as requested regarding **Item (7)**, and to a good faith and reasonable extent, any such similar incidents as described in **Item (5)**.

Plaintiff's other outstanding discovery request, **Item (6)**, involves what has been called "discovery on discovery" in which Plaintiff seeks to challenge the sufficiency and thoroughness of Defendant's production of documents and other evidence. This request reflects Plaintiff's continuing distrust of the completeness of Defendant's responses.

During Oral Argument, the Defendant sought to affirm compliance with the July 1, 2024, Order, asserting that no specific showing had been made to necessitate discovery on discovery. (Doc. 95). However, the prior motion to compel revealed a similar incident that was not disclosed to Plaintiff (Doc. 81, Ex. 2). Moreover, deposition testimony brought to light the existence of multiple databases and the processing of claims through a call center, records of which were absent in Defendant's supplementation (Doc. 81, ¶ 10, ¶ 19-20). Furthermore, Plaintiff appropriately highlights facial dissimilarities in the reporting of incidents (*Compare* Doc. 69 with Doc. 82).

While each of these factors may independently suffice to demonstrate a

discrepancy or deficiency, their cumulative effect has persuaded this Court that Plaintiff's burden in seeking "discovery on discovery" has been met. *See Culliver*, 2022 WL 19568966 at *1.

The Court acknowledges Defendant's argument that the claims and litigation database encompasses several departments and would contain any "similar incidents" to that of Plaintiff. However, this assertion was qualified by the statement that the database would only contain reports of "damage, injury, or hazard to health," not _**any**_ report as defined by the July 1 Order (Doc. 95).

Furthermore, the Defendant has expounded on the challenges associated with E-discovery, explaining the near impossibility of thoroughly examining all records held by Defendant relevant to the switch at issue. *See id.* The Court takes note of these difficulties but finds that they do not negate the necessity for a more comprehensive examination of Defendant's discovery efforts.

This Court believes the issue has been sufficiently narrowed to create a reasonable task for presenting reports on malfunctioning switches in the same or similar cooktops, as described in the Court's July Order. (*See* Doc. 79) ("Glass Top Stoves bearing any Whirlpool or Whirlpool umbrella brand with physical knobs that contain Robertshaw Infinite Switches. Only a finite number of Whirlpool and/or Whirlpool umbrella products will contain those exact specifications….")

The deficiencies in Defendant's current production stem from its failure

to comply fully with the Court's July 1 Order. [4] The Order did not limit the scope to incidents that only resulted in "damage, injury, or hazard to health," but encompassed all "claims, complaints, reports, alerts, notices or lawsuits" that resulted from malfunctioning switches (those which spontaneously ignited and/or otherwise had a temperature/heat output that deviated from the burner's controller) (Doc. 79, PageID.649). While the Court makes no finding on the actual existence of such additional documents, if the Defendant maintains that this request remains outside the realm of possibility, the burden now falls upon Defendant to provide responsive testimony regarding its production efforts.

Therefore, the Court, having determined that Plaintiff has met the threshold showing of deficiency in production, finds that Plaintiff is entitled to discovery on the process used in producing the documents, limited to those related to **Item (1)**. *See Culliver* 2022 WL 19568966. The Court orders that this information be provided through responsive 30(b)(6) testimony from individuals with knowledge of the database(s) and collection efforts, as

---

[4] As part of Defendant's on-going efforts to produce, they provided an unsworn affidavit from their legal department which describes their search of the "claims and litigation" database for responsive material. (Doc. 90-1, PageID.823) However, the affidavit does not indicate the inclusiveness of the database, nor is it instructive on distinguishing claims related only to "damage, injury, or hazard to health." Such explanations may have eliminated many of the issues currently before the Court.

requested. (Doc. 81, PageID.673). This testimony should encompass collection and production efforts to provide all "claims, complaints, reports, alerts, notices, or lawsuits," of same or similar incidents with any glass top stoves with Robertshaw Infinite Switches under the Whirlpool umbrella—even those that fall outside the scope of "damage, injury, or hazard to health."

## IV.   CONCLUSION

Upon consideration and for the reasons stated herein, Plaintiff's motion to compel (Doc. 81) is **GRANTED** in part and **DENIED** in part.

Defendant is **ORDERED** to comply with the requests of **Items (3)**, **(4)**, **(5)**, and **(7)**, and provide responsive testimony to the collection and production efforts as described above for **Item (6)**, within 21 days of this Order, on or before **October 8, 2024.**

To the extent Plaintiff seeks an award of "reasonable expenses" under Fed. R. Civ. P. 37(a)(5)(A) for bringing the subject motion to compel, any motion for reasonable expense under Rule 37(a)(5)(A) must be filed and served no later than October 1, 2024. Any such motion must include evidence and argument supporting both the amount and reasonableness of the expenses sought. The failure to file such a motion by the deadline will be deemed a waiver of any entitlement to Rule 37(a)(5)(A) expenses in connection with the subject motion to compel. (Doc. 81). If a motion for expenses is timely filed, an appropriate briefing schedule will be entered forthwith.

**DONE** and **ORDERED** this the 17th day of September 2024.

/s/ Katherine P. Nelson
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE