IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JARVIS JONES, <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | )    CIVIL ACTION No. 22-00475-KD-N |
| | ) |
| THE WHIRLPOOL CORPORATION, <br>     Defendant. | ) <br> ) |

## ORDER

This action is before the Court on the motion for leave to file third-party complaint against Electrical Components International, Inc. ("ECI"), (Doc. 129), filed by Defendant Whirlpool Corporation ("Whirlpool"). Upon consideration, and for the reasons below, the motion is **DENIED**.

    **I.**     **Relevant Background**

This action stems from an incident involving a Whirlpool Glass Top Range, which occurred on March 17, 2022, in Mobile County, Alabama. (Doc. 1-2). On October 31, 2022, Plaintiff Jarvis Jones brought a five-count action in the Circuit Court of Mobile County. (Doc. 1-2). Whirlpool removed the case to this Court based on federal diversity subject matter jurisdiction. (Doc. 1). Plaintiff contends that the incident resulted from a grease fire caused by the spontaneous ignition of the right front burner of the Glass Top Range while its control knob was in the OFF position. (Doc. 23 at 3). Plaintiff provides that "[m]ultiple inspections [of the Glass Top Range] revealed burning, melting, and electrical arching in the internal control for that knob and burner—an 'infinite switch' manufactured by a Whirlpool supplier, Robertshaw." (Doc. 131 at 2).

Whirlpool requests leave to join ECI into this action as a third-party defendant pursuant to Federal Rule of Civil Procedure 14. (Doc. 129). Whirlpool references Plaintiff's Designation of

Experts, which contends the "likely cause(s) of this condition is poor rivet forming or a defective rivet, both of which would be considered manufacturing defects." (Doc. 115 at 3; Doc. 129-2 at 27). Whirlpool denies Plaintiff's allegations regarding the cause of the incident but points out that ECI manufactured the rivet and wiring alleged to be defective. (Doc. 129 at 2). Whirlpool provides the relevant parts of the 2014 Purchase Agreement, which states that ECI agrees to indemnify and defend Whirlpool from personal injury or property damage caused by a defect in a part supplied by ECI. (Doc. 129 at 2; Doc. 129-1 at 4). Whirlpool argues that it demanded that ECI indemnify and defend it pursuant to the Purchase Agreement, but ECI refused and denied Whirlpool's tender request on March 26, 2025. (Doc. 129 at 2). Whirlpool seeks to add ECI as a third-party defendant and argues that it just learned that ECI may be liable for all or part of the claim against Whirlpool when Plaintiff served his expert disclosures on January 8, 2025. (Doc. 129 at 3).

Plaintiff responds by arguing that it "has long known ECI as the manufacturer of the Glass Top Range's electrical wiring system or 'wiring harness' that formed the circuitry of the Glass Top Range." (Doc. 131 at 2). Plaintiff's original Complaint, filed on October 31, 2022, did not name ECI as a defendant. (Doc. 1-2). But Plaintiff argues that that "Complaint implicated ECI by alleging that the 'right front burner of the Glass Top Range was controlled by an internal switch that had a bad electrical connection between the wire harness and the internal switch which ultimately led to failure of the switch.'" (Doc. 131 at 2) (quoting Doc. 1-2 at 12).

Plaintiff outlines history relevant to Whirlpool's claim against ECI, which he believes undermines Whirlpool's third-party claim. On February 17, 2023, the parties' third joint inspection of the Glass Top Range was held with legal counsel and engineering experts in attendance for Whirlpool and ECI. (Doc. 131-1). This inspection involved the first destructive test on the Glass Top Range and its components. (Doc. 131 at 3). ECI attended the first joint inspection—although

2

ECI had not been named a defendant—because Whirlpool demanded that ECI defend and indemnify Whirlpool *before* Plaintiff filed his suit. (Doc. 131-2 at 5) (explaining that Whirlpool sent ECI a letter requesting indemnification and defense on August 19, 2022). ECI initially accepted Whirlpool's tender pursuant to its Purchase Agreement's indemnity provision. (Doc. 131-2 at 3). Later, Plaintiff dropped any allegations related to the ECI wiring harness and instead narrowed his claims to the Robertshaw infinite switch by filing an Amended Complaint on April 19, 2023. (Compare Doc. 1-2 at 12 with Doc. 23 at 3, 6).

As a result of the Amended Complaint, ECI counsel emailed Whirlpool counsel on May 9, 2023, stating that "ECI no longer has a duty to defend Whirlpool" in this case. (Doc. 131-2 at 2). Three days later, Whirlpool tendered its defense of this lawsuit to Robertshaw. (Doc. 131 at 8). Plaintiff and Whirlpool held additional joint inspections of the Glass Top Range and components on November 20–21, 2024, and the protocol for the final inspection was drafted by Whirlpool. (Doc. 119-1 at 1).

Plaintiff explains that ECI remained on the periphery of this litigation and produced a wealth of technical documents in response to Plaintiff's non-party subpoena. (Doc. 131 at 4). But Plaintiff contends that Whirlpool was less forthcoming with its discovery responses, which required Plaintiff to file two motions to compel. (Doc 131 at 4). Plaintiff also notes the three Joint Stipulations for Amended Scheduling Orders, which cite "Whirlpool's resistance to discovery or related delays as grounds for revising" the deadlines. (Doc. 131 at 4). Plaintiff highlights the fact that Whirlpool never requested additional time to name third-party defendants in the joint stipulations to amend the scheduling order and the fact that the original scheduling order deadline to file motions to join third parties has passed. (Doc. 131 at 4) (citing Doc. 13 at 4) ("Any motion to . . . join other parties must be filed and served no later than July 3, 2023.")).

3

## II.     Law and Procedure

Under Rule 14(a)(1), a defendant may "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "Impleader, or third party practice, is only available when the third party defendant's liability is secondary to, or a derivative of, the original defendant's liability on the original plaintiff's claim." Faser v. Sears, Roebuck & Co., 674 F.2d 856, 860 (11th Cir. 1982). "Classically, actions for subrogation, indemnification, or contribution meet this test." 1 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary Rule 14 (2024).

Rule 14, however, "does not create any substantive rights to relief." Id. In other words, "a third-party action is proper only when a right to relief exists under the applicable substantive law." Id. "The impleading party need not establish that he will win, just that there is some recognized theory by which the putative third-party defendant 'may be liable' to him derivatively." Id.

"In those jurisdictions that follow the common-law rule and do not recognize a right of contribution between joint tortfeasors, impleader for contribution will not be allowed." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1448 (3d ed. 2024). "It is well settled that Alabama law does not permit contribution among joint tortfeasors and that, subject to limited exceptions, joint tortfeasors are not entitled to indemnity from one another." Harris v. Dubai Truck Lines, Inc., 347 So. 3d 1231, 1233–34 (Ala. 2021).

Trial courts have discretion in deciding whether to permit a third-party complaint. Wright & Miller, supra, at § 1443; see also S. Ry. Co. v. Fox, 339 F.2d 560, 563 (5th Cir. 1964) ("The trial court has wide discretion in determining whether to permit such third-party procedure to be

resorted to.").[1] In exercising discretion, courts should consider whether the claim "obviously lacks merit." Wright & Miller, supra, at § 1443. Courts should also consider whether the movant unreasonably delayed in seeking impleader, the risk of prejudice to the new or the non-moving party, and the risk of delay or unduly complicating the action. Id.; Gensler, supra; DeRubeis v. Witten Techs., Inc., 244 F.R.D. 676, 682 (N.D. Ga. 2007).

When a party seeks to join a third party after the scheduling order's deadline has passed, the party is in effect seeking to modify the scheduling order deadline. Gensler, supra (citing Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc., 648 F. Supp. 2d 1371, 1375 (M.D. Fla. 2009)). A party seeking to modify the scheduling order's deadline must demonstrate good cause under Federal Rule of Civil Procedure 16(b). See Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" Id. at 1418.

### III. Analysis

Whirlpool essentially provides two arguments for its motion. *First*, Whirlpool contends that it "just learned that ECI may be liable for all or part of the claim against Whirlpool when Plaintiff served his expert disclosures on January 8, 2025." (Doc. 129 at 3). *Second*, Whirlpool argues that its "contractual indemnity claim against ECI is permissible under Alabama law." (Id.). Whirlpool's arguments are insufficient to prove that its third-party claim should be allowed.

#### 1. Whirlpool's proposed impleader claim may have merit.

Whirlpool states that ECI may be liable for all or part of the claim against Whirlpool. (Doc. 129 at 3). Generally, this permits impleader against ECI under Federal Rule of Civil Procedure

---

[1] Fifth Circuit decisions rendered prior to the close of business on September 30, 1981 are binding precedent on this Court. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

5

14(a)(1). But Rule 14 does not create substantive rights to relief. Gensler, supra. And subject to limited exceptions, Alabama law does not permit contribution or indemnity among joint tortfeasors. Harris v. Dubai Truck Lines, Inc., 347 So. 3d 1231, 1233–34 (Ala. 2021).

Whirlpool does, however, provide the court with a single sentence, which shows that its proposed claim may have merit: "The province of a third party claim is therefore limited to instances of contractual indemnification from a claim or the indemnification that flows from circumstances where the defending party is entitled to stand in the shoes of claimant if the defending party is liable to the claimant." Ex parte Stenum Hosp., 81 So. 3d 314, 318–19 (Ala. 2011) (quoting 1 C. Lyons, Jr., and A. Howell, Alabama Rules of Civil Procedure Annotated § 14.1 (4th ed. 2004)). Here, Whirlpool and ECI entered a contract where ECI agreed to indemnify Whirlpool from personal injury or property damage caused by a defect in a part supplied by ECI. (Doc. 129 at 2; Doc. 129-1 at 4). Thus, it appears that Whirlpool's proposed impleader claim may be legally viable.

Because it is not obvious that the claim lacks merit, the Court considers the remaining factors for granting an impleader motion, and whether Whirlpool has shown good cause for allowing the motion after the Rule 16(b) deadline.

    **2. The record shows that Whirlpool unreasonably delayed in bringing its claim against ECI.**

Whirlpool provides one reason for its delay—it "just learned that ECI may be liable for all or part of the claim against Whirlpool when Plaintiff served his expert disclosures on January 8, 2025." (Doc. 131 at 3). But the record cuts against this statement.

The record shows that Whirlpool first learned that ECI may be liable to Whirlpool *before* this lawsuit was filed. In fact, Whirlpool demanded that ECI defend and indemnify Whirlpool three months before the Complaint. (Doc. 131-2 at 5). ECI initially accepted Whirlpool's tender but

6

withdrew the acceptance after Plaintiff filed an Amended Complaint on April 19, 2023, which dropped any allegations related to ECI. (Compare Doc. 1-2 at 12 with Doc. 23 at 3, 6). In the words of ECI counsel from an email on May 9, 2023, "ECI no longer ha[d] a duty to defend Whirlpool" in this case. (Doc. 131-2 at 2).

About twenty months after this email, Plaintiff served his expert disclosures on January 8, 2025. (Doc. 129 at 3). Whirlpool provides that this date is when it learned that ECI maybe liable. (Id.). But it took Whirlpool more than three months after this date for Whirlpool to file a motion for leave to implead ECI.

In sum, Whirlpool first learned that ECI may be liable well before the service of the expert disclosures. On August 19, 2022, Whirlpool requested ECI to defend and indemnify Whirlpool in Plaintiff's lawsuit. Whirlpool's excuse for the delay in impleading ECI is that it "just learned that ECI may be liable . . . when Plaintiff served his expert disclosures on January 8, 2025." (Doc. 129 at 3). This excuse is not reasonable. The next consideration is whether this delay causes prejudice to Plaintiff or ECI.

### 3. Granting Whirlpool's motion despite its delay would cause prejudice.

Whirlpool provides no analysis on whether its delay would cause prejudice to Plaintiff or ECI. Plaintiff, on the other hand, does. Plaintiff explains that his ability to efficiently prosecute his claims has been impeded by "Whirlpool's repeated refusal to engage in discovery . . . causing protracted motion practice and numerous amendments to the scheduling order." (Doc. 131 at 8). Plaintiff also notes that ECI will also be prejudiced by having to play catch-up on more than two years of discovery and litigation to defend against Whirlpool's claims. (Id.).

The record supports Plaintiff's position. Plaintiff has filed two motions to compel, (Doc. 68, 81), and the scheduling order has been amended three times. (Docs. 51, 66, 104). More recently,

Whirlpool filed a motion for leave to file a third-party complaint against Plaintiff's mother, (Doc. 115), which obviously lacked merit. (Doc. 127). Furthermore, ECI made clear almost two years ago that it believed it had no duty to defend Whirlpool in this action. (Doc. 131-2 at 2). Thus, granting Whirlpool's motion despite its delay would appear to prejudice the new and non-moving party. See DeRubeis v. Witten Techs., Inc., 244 F.R.D. 676, 683 (N.D. Ga. 2007) (explaining that the new and non-moving party would be prejudiced by "allowing Plaintiffs to implead" because it "would expand the scope of, and create more uncertainty in, an already contentious discovery process").

**4. Allowing impleader would delay or unduly complicate the action.**

Whirlpool provides no analysis on whether allowing its impleader would delay or complicate this action. Plaintiff argues that allowing Whirlpool's claim "would undoubtedly complicate the legal issues in this case and delay the upcoming trial." (Doc. 131 at 7). The Court agrees.

Regarding delay, discovery is set to close on April 30, 2025. (Doc. 128). As explained by Plaintiff, allowing Whirlpool's impleader would likely require the reopening of discovery and the delay of trial. (Doc. 131 at 7). Regarding complication of the action, "Whirlpool's proposed Third-Party Complaint would inject a host of ancillary contract law issues into what is already a technical and complex product liability action." (Doc. 131 at 7).

In DeRubeis, the district court explained that permitting an impleader "would unnecessarily complicate the issues in [the] case as well as delay their resolution." DeRubeis v. Witten Techs., Inc., 244 F.R.D. 676, 683 (N.D. Ga. 2007). The court reasoned that the docket showed that the case had "not been a model of speedy and efficient litigation" and that "[a]dding another party to the lawsuit will only increase the opportunity for excessive motions practice and overly-litigious conduct to proliferate." Id. The court also explained that the fact that the case had been pending

for almost three years added to its determination that allowing the impleader "would further delay" the proceedings. Id.

Like the docket in DuReis, the docket here shows that allowing the impleader "will only increase the opportunity for excessive motions practice and overly-litigious conduct to proliferate." Id. Furthermore, this case has been pending for nearly two-and-a-half years. Thus, the Court is certain that permitting Whirlpool's impleader would delay or unduly complicate the action.

**5. Whirlpool has failed to show good cause for amending the scheduling order.**

Finally, Whirlpool provides no analysis on whether there is good cause for amending the scheduling order. Plaintiff, on the other hand, argues that "Whirlpool's inexcusable lack of diligence is fatal to its request to untimely implead ECI under both Rule 14 and Rule 16." (Doc. 131 at 6). Again, the record supports Plaintiff's position.

Whirlpool claims it first learned that ECI may be liable to it on January 8, 2025. (Doc. 129 at 3). But Whirlpool learned that ECI may be liable to it before the lawsuit was filed on October 31, 2022. (Doc. 1-2). (Doc. 131-2 at 5) (explaining that Whirlpool sent ECI a letter requesting indemnification and defense on August 19, 2022). And Whirlpool never requested additional time to add third parties. In short, Whirlpool has failed to demonstrate good cause for modifying the scheduling order's deadline to add ECI as a third party. Thus, the Court cannot grant Whirlpool's motion.

### IV.  Conclusion

Trial courts have discretion in deciding whether to permit a third-party complaint. Courts should consider whether the movant unreasonably delayed in seeking impleader, the risk of prejudice to the new or the non-moving party, and the risk of delay or unduly complicating the

action. Moreover, a party seeking to join a third party after the scheduling order's deadline has passed must demonstrate good cause. Here, the record shows that Whirlpool's delay in seeking impleader was unreasonable. The record also shows a risk of prejudice to the new and non-moving party and a risk of delay and unduly complicating the action. Apart from these concerns, Whirlpool has failed to demonstrate good cause for modifying the scheduling order's deadline to implead. Therefore, Whirlpool's motion for leave to file a third-party complaint against ECI, (Doc. 129), is **DENIED**.

**DONE** and **ORDERED** this **17th** day of **April 2025.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**